## Commonwealth v. The Baker-Whiteley Coal Company

*T. McKeen Chidsey*, Attorney General, and *David Fuss*, Deputy Attorney General, for Commonwealth.

*Hull, Leiby & Metzger* and *William M. Young*, for appellant.

RICHARDS, J., March 20, 1950.—The fiscal officers of the Commonwealth finally determined the corporate net income tax of defendant for the year 1944 to be $2,-144.60. From this determination an appeal was taken to this court. At the hearing certain evidence was offered, including an agreement for trial without a jury and a stipulation of facts. The case has been argued and is now ripe for decision.

The facts are not in dispute. Appellant is a West Virginia corporation chartered "for the purpose of conducting a coal business . . . and for acquiring . . . tugs and vessels, and for making contracts for towage . . ." It has been engaged in the coal business since 1898 and in the tugboat business since 1900. It has been authorized to engage in the business of mining and shipping coal in Pennsylvania. All of its activities were controlled from its executive office in Baltimore.

It produced coal from leased mines in Pennsylvania, paying the royalty from its Baltimore office. In 1944 it thus mined 190,692 tons, all of which was sold except one carload of 52 tons, which was used in one of its own tugboats. This coal is not suitable for use in tugboats. During this year it also bought from others 12,-124 tons of coal, selling 7,201 tons to tugboat and steamboat operators and using 4,923 tons in its own tugboats. The coal so used was charged to tugboat operations at the same price it was sold to others.

Defendant's tugboat did not tow any vessel using coal sold by defendant, nor any vessel carrying as cargo any coal produced, acquired or sold by it.

With the exception of the mining operations in Pennsylvania, practically all of the activities of defendant were carried on in Baltimore and vicinity. The general records of the company are kept at the Baltimore office; stockholders' and directors' meetings are held there; securities are kept there; cash is received at and disbursements made from this office. In general, separate accounts are kept for the coal business and the tugboat business, those of the former being on an accrual basis and of the latter on a cash basis. Taxes, insurance, depreciation and payroll are charged ultimately to the operation involved. Certain costs were allocated in accordance with the following accounting procedure: Rent and communication expenses were charged 50 percent to each operation on a volume of work basis as

determined by defendant's treasurer. Baltimore office payroll, including officers' and clerical salaries, was charged to each operation on the basis of volume of work, time expended, ability and nature of work, as determined by the treasurer. West Virginia corporation taxes and Maryland franchise tax were charged 50 percent to each operation. The Maryland income tax and the Baltimore property tax were charged entirely to tugboat operations. The Pennsylvania franchise tax was charged entirely to the coal operations. The Federal old age and unemployment taxes, Pennsylvania unemployment compensation taxes, workmen's compensation, fidelity and fire insurance were charged to each operation on an actual basis. Items of direct expense were charged in their entirety to the operation for which they were incurred. Receipts from coal sales, commissions from coal operations, Baltimore rents, mine house rents and income from investments were credited or charged to the coal operations in accordance with this practice. The remaining receipts and disbursements from the tugboat business were reflected in its books relating to that business.

The officers and some employes devoted part of their time to each operation. The investments were acquired from moneys derived from each operation. Cash receipts were deposited in a common account.

The balance sheet in defendant's 1944 corporate net income tax report is reported on an accrual basis of accounting, except as affected by the profit and loss statement of its tugboat operations. This balance sheet reflects ledger accounts maintained by defendant which do not segregate as between the coal and the tugboat operations, cash, investments, deferred charges, accrued expenses, surplus reserves, capital stock and surplus, but which do segregate capital assets as between each operation. Inventories, accounts receivable and

accounts payable in the balance sheet relate entirely to the coal operations.

The accounts prepared as indicated showed a loss of $4,009.62 in the coal business for the year involved, and a profit of $145,814.34 in the tugboat business, or a net income from both of $141,804.72. As a result of report of change made by the Federal Government this was reduced to $141,617.22. This was the final figure used in computing the tax. The tax has been paid in full in the amount of $2,144.60 and interest thereon as settled, in the amount of $163.40.

It is the contention of appellant that the income from the tugboat operations should be excluded from the total net income in computing the tax. The Commonwealth contends that it should be included.

### Discussion

The Corporate Net Income Tax Act of May 7, 1943, P. L. 217, under which this tax was imposed, provides that:

"Every corporation shall be subject to, and shall pay for the privilege of doing business in this Commonwealth, or having capital or property employed or used in this Commonwealth . . . a state excise tax . . . at the rate of 4% per annum upon each dollar of the net income . . . during the year 1944 . . .": section 3.

When the entire business of the corporation is not transacted in Pennsylvania the tax is determined by multiplying one third of the net income by each of three allocation fractions commonly known as the tangible property fraction, the wages and salary fraction and the gross receipts fraction. The sum of these three products determine the income to be assigned to Pennsylvania. Subject to some qualifications, net income is defined to be that "returned to and ascertained by the Federal Government": section 2.

In the present case the correctness of the allocation fraction is not questioned. The attack is centered on the net income which is to be used in the computation. It is earnestly contended that while the act may be constitutional generally, it may bring about an unconstitutional result in a particular case. Specifically it is urged that an unconstitutional result is produced in the present instance because the measure of the tax, to wit, net income as defined by the act, includes income which has no relation to the activity carried on here and no relation to the privilege granted.

The allocation fractions used in computing the foreign franchise tax and the corporate net income tax are the same; compare 72 PS §1871(b) with 72 PS §3420 (b). However, the multiplicand in the former case is the value of the capital stock and in the latter, net income. Otherwise the formula is the same. In dealing with the franchise tax our Supreme Court has held that capital stock value having no relation to the privilege must be excluded from the multiplicand.

"By these principles it is obvious that since the tax is nothing but one upon the value of a privilege and the taxable measure is fundamentally the capital stock used in connection with that privilege, we must for the purpose of determining the validity of the tax separate from it that capital stock value which bears no relation to the privilege. In determining the franchise tax to be levied on the Columbia Gas and Electric Company, the value of its assets represented by capital stock used in connection with its holding company business should have been excluded by the taxing officials": Commonwealth v. Columbia Gas & Electric Co., 336 Pa. 209, 225.

The same principles should apply to the corporate net income tax. It, too, is a privilege tax. The measure thereof is the income derived from the exercise of the privilege. In determining the validity of the tax we

must separate from the income that portion thereof which has no relation to the privilege.

The burden of establishing the fact that the income from the tugboat business has no relation to the privilege of conducting a coal business in Pennsylvania is upon appellant.

The courts have refused to exclude from the measure of the tax capital or income of another activity, when the business of the corporation is unitary in character. This is because the whole contributes to the success and value of the business conducted in Pennsylvania. Where a close connection exists between several projects enabling the corporation to derive advantages not inherent in the several parts alone, the unitary principle has been applied. Bulk buying at a discount, national advertising, advantages arising in manufacturing processes, in selling methods, or in the operation of chain stores and restaurants, have been deemed to increase the business potency and to result from a close relationship between the several activities, thus enhancing the value of the privilege in this State. Examples of this type are Commonwealth v. Ford Motor Company, 350 Pa. 236; Commonwealth v. Quaker Oats Company, 350 Pa. 253; and Commonwealth v. United Biscuit Co., 56 Dauph. 163. On the other hand, exclusion from the tax measure has been allowed when the business is dual or multiform in character and the excluded portion has no relation to the intrastate activity or to the value of the privilege granted. Instances of this kind are Commonwealth v. Columbia Gas & Electric Co., supra; Commonwealth v. The Mundy Corporation, 346 Pa. 482; and Piedmont & Northern Railway Co. v. Query, 56 F. (2d) 172.

In the present case it is difficult to see any relationship between the tugboat business of defendant and its coal business. The former is conducted wholly without

this State and is an activity which defendant is not authorized to conduct within this State. The tugboats do not use the coal produced by defendant in this State. Neither do they transport coal, or tow vessels having aboard coal sold by them. The isolated instance of using 52 tons of coal produced by defendant in Pennsylvania on its tugboats must be dismissed as de minimis, since such coal is not suitable for such use.

The bookkeeping methods and accounting practices show the complete segregation of the two businesses. All items of direct expense were charged to the business involved. Certain other expenses were allocated upon the basis of volume of work or time expended. Generally wages were charged directly to the operation involved. Some few employes performed services to both activities. In such cases the cost of their services were allocated. Officers' salaries were also allocated directly. There is no escape from the allocation of officers' salaries, since their duties relate to all of the operations of the company. Allocating the wages or salaries of a few employes performing duties in both businesses seems to be just and proper. Otherwise more employes might be required to do the necessary work and the net income be thereby reduced. Matters of taxation and kindred charges were allocated in a just and fair manner. The Commonwealth charges that this allocation was a matter of discretion not regulated by a fixed standard. It cites no example of an improper or unjust allocation. Since the act prescribes no guide for such allocations, it must be left to the intelligent discretion of some one. The Columbia Gas & Electric case, supra, involved allocations which were recognized and upheld by the court. The good faith and fairness of the allocations made in the present case have not been questioned. Unless allocations are allowed in proper cases, the injunction of the Supreme Court in the Columbia case, supra, can-

not be obeyed, nothing could be excluded from the measure of the tax and all corporations would ipso facto be unitary. This is not our conception of the law. In our opinion defendant has made a complete segregation of its coal business from its tugboat business, and the latter has no relation to the activity conducted in Pennsylvania or to the privilege granted. Hence the income of the tugboat business must be excluded from the measure of the tax.

### Conclusions of Law

1. Defendant during the year 1944 was engaged in two distinct and unrelated businesses, to wit, the tugboat business conducted at Baltimore, Md., and the coal business conducted in Pennsylvania and elsewhere.

2. During that year defendant engaged in the coal business in Pennsylvania pursuant to authority granted.

3. Defendant had not been granted authority to engage in the tugboat business in Pennsylvania and did not so engage.

4. The tugboat business had no relation to the coal business, did not contribute to the success of the coal business, and had no connection with the privilege granted to conduct a coal business in this State.

5. The officers of the corporation were required to supervise both business and it was proper to charge their salaries proportionately to each business.

6. The salaries of employes devoting some of their work to each business may be allocated to each business.

7. The allocation of taxes, insurance and kindred costs between the two businesses was just and proper.

8. The bookkeeping methods and accounting practices brought about a proper allocation between receipts and expenses of each business and attributed the proper income to the coal business conducted in Pennsylvania.

9. These methods and practices correctly showed that the coal business was conducted at a loss of $4,009.62 for the year 1944.

10. Defendant, under the facts of this case, was not liable to the Commonwealth for the payment of any corporate net income tax for the year 1944.

11. Defendant has paid on account of said tax for the year 1944 the sum of $2,144.60 and interest thereon in the sum of $163.40 or a total of $2,308.00.

12. The defendant is entitled to a refund or credit of the said amount of $2,308.

13. No commission is due the Attorney General.

### Decree

And now, to wit, March 20, 1950, the appeal is dismissed at the cost of the Commonwealth. Judgment is hereby entered in favor of defendant and against the Commonwealth for the sum of $2,308, unless exceptions hereto be filed within the time limited by law.